PAINESVILLE RACEWAY, INC., APPELLEE, *v.*
DEPARTMENT OF LIQUOR CONTROL, APPELLANT.

(No. 42088—Decided December 18, 1980.)

*Messrs. Marshman, Snyder & Corrigan* and *Mr. Anthony A. Cox*, for appellee.

*Mr. William J. Brown*, attorney general, and *Mr. James M. Guthrie*, for appellant.

JACKSON, P. J.  This is an appeal from the decision of the Court of Common Pleas of Cuyahoga County, reversing the decision of the Liquor Control Commission on an express finding that the decision of the commission was contrary to law, and ordering the Department of Liquor Control to issue a liquor permit to the appellee, Painesville Raceway, Inc.

The facts pertinent to disposition of this appeal are briefly as follows.

On March 30, 1957, Berlo Vending Company (hereinafter "Berlo") executed a concession agreement with Penn-Ohio Downs, Inc., for the right to operate a food and beverage concession on the premises of Sportsman Park, a horse racing and meeting grounds owned by Penn-Ohio Downs, Inc. Under the contract, the concessionaire, Berlo, was granted the exclusive right to operate the concession for five years, with the option to renew for an additional five years. By its terms this agreement provided no other option to renew.[1]

Sometime after execution of this agreement and before 1959, Penn-Ohio Downs, Inc., became Northfield Park Raceway, Inc., and Northfield Park Raceway became the successor in interest under the concession contract with Berlo. In 1959, the appellee, Painesville Raceway, Inc. (hereinafter "Painesville"), executed a lease agreement with Northfield Park Raceway (hereinafter "Northfield"), granting to the lessee, Painesville, the right to occupy the premises and con-

---

[1] It would appear that this contract expired and was fully performed in 1967, or thereabouts. There is nothing in the record indicating that this contract was extended beyond 1967.

duct racing activities at Northfield Park,[2] for the period of racing dates that were given to Painesville by the State Racing Commission.[3] In 1966, Painesville was requested by Northfield to execute a concession agreement with Berlo for the concession rights at Northfield Park during Painesville's racing season. Finding that it could not negotiate an acceptable contract for the concession, Painesville refused to execute a contract granting Berlo the right to operate the concession during Painesville's racing season.[4] On June 23, 1966, Painesville filed an application for a liquor permit with the Department of Liquor Control for the operation of a liquor concession at Northfield Park.

While its application was pending and following the decision not to execute a concession agreement with Berlo, Painesville realized that it was in its best interests to serve liquor to its racing patrons. Because it was not permitted to operate the liquor concession at Northfield Park, Painesville recanted and decided to permit Berlo to operate the food and beverage concession during Painesville's racing season.[5] Sometime after 1966, Berlo Vending Company was purchased by Ogden Food Services, Inc. (hereinafter "Ogden"), and Berlo's contract rights were acquired by Ogden.[6]

On August 1, 1972, Painesville executed a new lease agreement with Northfield. In pertinent part, the agreement granted Painesville the right to occupy the following:

"[t]he horse racing meeting grounds known as Northfield Park * * * together with any other property owned by Lessor and used in connection with its race meeting, including all enclosures, buildings, facilities *and all equipment owned by Lessor, now located on said premises, except such as is reserved for the concessionaire,* to be used for the conduct of a harness

---

[2] The record indicates that sometime between 1957 and 1959, Sportsman Park was renamed Northfield Park.

[3] The record indicates that Painesville's racing season lasted from 40 to 60 days per year.

[4] The record indicates that Berlo held a liquor permit for Northfield Park at the time of these negotiations.

[5] It would appear that Painesville retained the right to terminate this arrangement at will.

[6] The record indicates that Ogden thereafter assigned its right to operate the concession to Doris Lee Caudill.

horse racing meeting and for no other purpose whatsoever."[7] (Emphasis added.)

On August 16, 1972, Northfield assigned and delegated its rights and duties under its lease agreements to a limited partnership known as Northfield Park Association.

On October 8, 1976, the Department of Liquor Control acted upon and rejected Painesville's application for a liquor permit for Northfield Park. As a basis for its decision, the department asserted that Painesville had no leasehold interest in the concession areas of the racetrack, and that it could not grant the application for a second liquor permit at Northfield Park because there was already one holder of a liquor permit at that location held by Ogden Food Services, Inc.

Following the rejection of its application by the Department of Liquor Control, Painesville appealed to the Liquor Control Commission, contending that the department had misconstrued Painesville's lease agreement and that Painesville had the right to occupation and use of the concession area for which the permit had been sought.[8]

On April 14, 1977, a hearing was convened by the Liquor Control Commission to consider the department's rejection of Painesville's application for a liquor permit.[9] After considering the testimony of several witnesses, the Liquor Control Commission affirmed the department's decision to reject Painesville's application. The commission's order provided:

"The question involved herein is whether the Appellant may be issued a new Class D-3 permit authorizing the sale of spirituous liquor for consumption on the premises which premises presently is the same premises where another permit holder is authorized to sell spirituous liquor, and other intoxicating liquors and beer, for consumption thereon.

"We find no specific statute or regulation which expressly

[7] The record indicates that Painesville was only one of three racing organizations leasing Northfield Park. There is some evidence that Berlo, and later Ogden, operated the food and beverage concession for the other lessees of the racetrack during their respective racing seasons.

[8] The application was sought for an area of the racetrack known as "Horseman's Cafeteria."

[9] The record indicates that at the time of this hearing, Ogden Food Services, Inc., the holder of the liquor permit at Northfield Park, had filed with the Department of Liquor Control an application for the transfer of its permit to Northfield Park Association.

prohibits the issuance of two or more permits to two or more permit holders at one and the same permit premises; however, after a careful review of the entire Liquor Control Act the conclusion is reached that the intent of the Act was to allow only one permit holder to operate at a given premises. We further find that this is the only practical conclusion that may be drawn and the only one which would allow reasonable enforcement of the Liquor Control Laws."[10]

After notification of the commission's decision, Painesville filed a timely notice of appeal with the Court of Common Pleas of Cuyahoga County. After a review of the administrative record, the trial court reversed the decision of the Liquor Control Commission on February 20, 1980. Finding that the decision of the Liquor Control Commission was not in accordance with law, the trial court ordered the Director of Liquor Control to issue the requested liquor permit to Painesville. On March 12, 1980, the Department of Liquor Control filed timely notice of appeal from the decision of the Court of Common Pleas. On July 3, 1980, Painesville filed a motion to dismiss the department's appeal; and, on July 22, 1980, this court referred the matter of the dismissal to the panel hearing the case on the merits.[11]

The appellant presents three assignments of error:

*Assignment of Error No. I:*

"Under Section 119.12, Revised Code, the Court of Common Pleas erred by failing to decide one of the two mandatory tests: Is the order of the Liquor Control Commission supported by reliable, probative and substantial evidence?"

*Assignment of Error No. II:*

"The Court of Common Pleas erred by going beyond the tests for appellate review set forth in Section 119.12, Revised Code, and ordering the Department of Liquor Control to issue the license without compliance with 4301:1-1-12, a regulation of the Liquor Control Commission, and Sections 4303.26, 4303.29 and 4303.292 of the Ohio Revised Code."

*Assignment of Error No. III:*

---

[10] From this language, it might be inferred that the commission was in fact persuaded that Painesville had a leasehold interest in the concession areas of Northfield Park.

[11] On July 23, 1980, the department filed its brief in opposition to the motion to dismiss.

"The Court of Common Pleas erred by holding, in effect, that two different individuals (corporations) may hold the same type of liquor permit at the identical location. Such decision would be directly contrary to Sections 4303.27, 4303.29, and 4303.30, Revised Code, and would result in a special provision license as to safekeeping and enforcement problems not authorized by either the Ohio Revised Code or the Liquor Commission regulations."

The threshold issue for determination by this court is whether the appellee's motion to dismiss the appeal of the appellant, the Department of Liquor Control, is well taken.

R. C. 119.12 confers upon this court a limited appellate jurisdiction over administrative appeals taken by a state agency from the decision of the Court of Common Pleas. In pertinent part, R. C. 119.12 provides:

" * * * The judgment of the court [of common pleas] shall be final and conclusive unless reversed, vacated, or modified on appeal. Such appeals may be taken either by the party or the agency and shall proceed as in the case of appeals in civil actions as provided in sections 2505.01 to 2505.45 of the Revised Code. *Such appeal by the agency shall be taken on questions of law relating to the constitutionality, construction, or interpretation of statutes and rules of the agency,* and in such appeal the court may also review and determine the correctness of the judgment of the court of common pleas that the order of the agency is not supported by any reliable, probative, and substantial evidence in the entire record. * * * " (Emphasis added.)

In the instant case, the appellee contends that because the journal entry of the Court of Common Pleas fails to expressly interpret or construe a specific provision of a particular liquor control statute, rule, or regulation, this court is without jurisdiction to consider the merits of the appeal taken by the Department of Liquor Control.

In *Mentor Marinas* v. *Bd. of Liquor Control* (1964), 1 Ohio App. 2d 219, the Franklin County Court of Appeals considered an agency's right to appeal a decision of the Court of Common Pleas under R. C. 119.12. In *Mentor Marinas,* the court stated:

"It is apparent that under this statute [R. C. 119.12] it is not enough that there be a final order, nor is it enough that the

appeal be on 'questions of law' as is true for the ordinary litigant. * * * Whatever the reason, the Legislature in this statute has specifically limited agencies to a narrower right of appeal. The statute requires a final order which raises a question of law, and that question must relate 'to the constitutionality, construction, or interpretation of statutes and rules and regulations * * * .' It is only when 'such' an appeal has been established that this court may then 'also' consider and review the 'correctness of the judgment,' *i.e.,* assume jurisdiction to review other questions of law that may be presented.

"This interpretation of the statute is firmly established. In *Katz* v. *Department of Liquor Control of Ohio* (1957), 166 Ohio St. 229, a judgment of the Common Pleas Court had found that a board order was not supported by reliable, probative, and substantial evidence. The Supreme Court affirmed the decision of this court that such an order was not appealable under the statute. This court had sustained a motion to dismiss the appeal. The opinion of this court states that the language in the statute makes it a condition precedent to the review that the appeal involve a question of constitutionality or interpretation (76 Ohio Law Abs. 129). * * * " *Id.,* at 222.

It is well established that the Court of Appeals may look beyond the language of the journal entry to determine whether it has jurisdiction to consider the appeal of the agency under R. C. 119.12. See *Andrews* v. *Bd. of Liquor Control* (1955), 164 Ohio St. 275 (construing the right of appeal under R. C. 119.12, prior to several amendments,[12] and holding that resort may be had to the "opinion" of the court); and *A. B. Jac., Inc.,* v. *Liquor Comm.* (1972), 29 Ohio St. 2d 139 (construing the right of appeal under R. C. 119.12, and holding that resort may be had to the entire journal entry and the record of the proceedings below). It is clear from a review of the record that this appeal does in fact present an issue of interpretation of several liquor control laws.

The record indicates that the Liquor Control Commission found that, as a matter of law, the Ohio liquor control statutes and the rules and regulations promulgated thereunder forbid the issuance of more than one liquor permit to more than one individual for the same location. It was this determination which was reversed by the Court of Common Pleas, and it is

---

[12] The amendments did not alter the language under consideration here.

this decision by the Court of Common Pleas which is the subject of appeal to this court.

Whether the intent of R. C. Chapter 4303 precludes the Court of Common Pleas from ordering the issuance of more than one permit under the circumstances of this case[13] presents a question of interpretation of the statutes, and the rules and regulations of the Liquor Control Commission which vests this court with jurisdiction to consider the merits of this appeal pursuant to R. C. 119.12.

Accordingly, the appellee's motion to dismiss the appeal is overruled.

In support of the third assignment of error,[14] the appellant contends that the issuance of more than one permit for the same location is contrary to the intent of R. C. Chapter 4303 and the rules and regulations promulgated thereunder, where the second permit is to be issued to someone other than the holder of the first permit.

The record indicates that Ogden Food Services, Inc. (Ogden), is the holder of a liquor permit for the entire area known as Northfield Park. Notwithstanding the fact that Ogden's contractual right to operate the Northfield Park concession is contingent upon the continuing approval of at least one of the three lessees of Northfield Park, Ogden's liquor permit does not expressly limit Ogden's operation under the permit to the times when Ogden is the concessionaire at Northfield Park.

Although the appellant concedes that there is no Ohio liquor control statute or promulgated rule or regulation which would prohibit the issuance of separate permits to separate individuals for different times at the same location, the appellant contends that the issuance of separate permits is contrary to the intent of Ohio's liquor control laws, when those laws are considered *in pari materia.*

The appellant contends that R. C. 4303.27, 4303.272,

---

[13] This issue is raised by the assignments of error.

[14] *Assignment of Error No. III:*

"The Court of Common Pleas erred by holding, in effect, that two different individuals (corporations) may hold the same type of liquor permit at the identical location. Such decision would be directly contrary to Sections 4303.27, 4303.29, and 4303.30, Revised Code, and would result in a special provision license as to safekeeping and enforcement problems not authorized by either the Ohio Revised Code or the Liquor Commission regulations."

4303.29 and 4303.30 evidence a legislative purpose and intent to forbid issuance of separate liquor permits to separate individuals for the same business location.

Taken together, R. C. 4303.27 and 4303.272 provide for the issuance and relinquishment of liquor permits, but they do not evidence a legislative intent or purpose to forbid issuance of separate permits to separate individuals for the same location.

R. C. 4303.29 restricts the authority of the Department of Liquor Control to issue permits in the state of Ohio through the establishment of a quota system. There is nothing in this provision which would evidence a legislative intent or purpose to deprive the department of authority to issue more than one permit to more than one individual for the same location.

R. C. 4303.30 provides for the issuance of duplicate permits to existing holders of issued permits, and is not pertinent to the issuance of new permits. We are persuaded that R. C. 4303.30 does not evidence a legislative intent or purpose to restrict the issuance of new permits under the circumstances of the case at bar.

Taken together, it is clear that the provisions advanced by the appellant do not evidence an intent or purpose to forbid the issuance of a second permit under the circumstances of this case. The appellant's attempt to read into the language of these statutes an intent to preclude the issuance of a permit under these circumstances is neither founded on reason nor logic.[16] If the contention of appellant is to prevail, the remedy should be sought from the Ohio General Assembly which promulgates the laws governing the issuance of liquor permits.

When the Department of Liquor Control first decided to reject Painesville's application for a liquor permit, it rested its decision on two grounds: the absence of a leasehold interest which would permit Painesville to occupy the concession area during its racing season; and, the department's perceived lack of authority to issue a second permit for the same location. However, when it became apparent to the Liquor Control Commission that Painesville did in fact have the right to occupy the concession areas of the racetrack during its racing

---

[16] R. C. 4303.292 authorizes the Department of Liquor Control to refuse to issue a permit for a plethora of reasons, but does not expressly authorize the department to refuse issuance under the circumstances of this case.

season, the department abandoned its first argument and relied upon what it perceived as a lack of authority.

Although the full extent of Ogden's right to occupy the premises is not clear from the record, it is clear that Ogden has no right to occupy the concession areas during Painesville's racing season, in the absence of Painesville's consent and approval. In light of these facts, the department's refusal to issue a permit to Painesville, while allowing Ogden to hold a permit without regard to Ogden's right to occupy the premises, is not only inconsistent, but is against public policy.

This court cannot endorse the result advocated by the department since it would give the holder of a permit superior bargaining power and would unjustly force a party with the right to occupy the premises to deal with the holder of the permit on the holder's terms or forego the right to serve liquor on the premises.

The decision of the Court of Common Pleas that two different individuals may hold the same type of liquor permit at the same location is not contrary to the intent or purpose of the liquor control laws.

In support of the third assignment of error, the appellant also asserts that issuance of two permits to two separate individuals at the same location would present unmanageable enforcement dilemmas for department inspectors.[16]

None of the arguments advanced by the department are sufficient to justify the refusal to issue a second permit under the facts and circumstances of this case. Because Painesville and Ogden would presumably be operating the same concession at different times of the year, administration of such an arrangement by the department would not seem overly burdensome.[17]

The third assignment of error is without merit and is overruled.

In support of the first assignment of error[18] the appellant

---

[16] The record indicates that although the Department of Liquor Control will issue more than one new permit for the same location to the same individual, as a matter of policy, the department refuses to issue more than one permit for the same location to separate applicants.

[17] Ohio Adm. Code 4301:1-1-16 imposes upon a permit holder a duty to notify the department if the permit holder desires to discontinue the operation of his business for a period in excess of 30 days.

[18] *Assignment of Error No. I:*

contends that the Court of Common Pleas erred in failing to decide whether the decision of the Liquor Control Commission was supported by reliable, probative and substantial evidence.

The record indicates that the Court of Common Pleas found that the decision of the Liquor Control Commission was contrary to law. The record fails to indicate that the court expressly ruled upon or determined the quality of the evidence.

R. C. 119.12 authorizes the Court of Common Pleas to reverse or modify the decision of the agency for two reasons. In pertinent part, R. C. 119.12 provides:

*"The court may affirm the order of the agency complained of in the appeal if it finds,* upon consideration of the entire record and such additional evidence as the court has admitted, *that the order is supported by reliable, probative, and substantial evidence and is in accordance with law.* * * * "* (Emphasis added.)

Although the Court of Common Pleas may be required to expressly determine that an agency's decision is supported by reliable, probative, and substantial evidence before it may affirm the decision of the agency,[19] the court is not required to determine the quality of the evidence where it concludes that the agency's decision rests upon a misinterpretation of the applicable law. The appellant cites no authority or rule of law which would require the Court of Common Pleas to first evaluate the quality of the evidence before reversing a decision which is contrary to law. Nor have we discovered any such authority.

The first assignment is not well taken.

In support of the second assignment of error[20] the appellant contends that the trial court was without authority to order the Department of Liquor Control to issue a permit

"Under Section 119.12, Revised Code, the Court of Common Pleas erred by failing to decide one of the two mandatory tests: Is the order of the Liquor Control Commission supported by reliable, probative and substantial evidence?"

[19] See *Grecian Gardens* v. *Bd. of Liquor Control* (1964), 2 Ohio App. 2d 112.

[20] *Assignment of Error No. II:*

"The Court of Common Pleas erred by going beyond the tests for appellate review set forth in Section 119.12, Revised Code, and ordering the Department of Liquor Control to issue the license without compliance with 4301:1-1-12, a regulation of the Liquor Control Commission, and Sections 4303.26, 4303.29 and 4303.292 of the Ohio Revised Code."

without complying with the mandatory provisions of R. C. 4303.26, 4303.29 and 4303.292.

R. C. 4303.29 requires the Department of Liquor Control to investigate an applicant before issuing a liquor permit to that applicant. R. C. 4303.292 requires the department to investigate the impact of the issuance of a permit on the surrounding neighborhood before issuing a liquor permit at a particular location.

The record indicates that the Department of Liquor Control conducted the investigations required by R. C. 4303.29 and 4303.292.[21] Because these investigations were complete and admittedly favorable to the applicant, the department's contention that the trial court was without authority to order issuance of the permit without these investigations is without merit.

R. C. 4303.26 establishes a "local option" procedure, granting to a municipality the right to participate in the issuance hearing for a permit which the department intends to issue within a municipality's corporate limits. In pertinent part, R. C. 4303.26 provides (see 137 Ohio Laws 1868):

" * * * *When an application for a new class C or D permit is filed,* when class C or D permits become available, when an application for transfer of ownership of a class C or D permit or transfer of a location of a class C or D permit is filed, or when an application for an F-2 permit is filed, *no permit shall be issued,* nor shall the location or the ownership of a permit be transferred, *by the department until the department notifies the legislative authority of the municipal corporation, if the business or event is or is to be located within the corporate limits of a municipal corporation,* or the clerk of the board of county commissioners and township trustees in the county in which the business or event is or is to be conducted, if the business is or is to be located outside the corporate limits of a municipal corporation, *and an opportunity is provided officials or employees of the municipal corporation* or county and township, who shall be designated by the legislative

---

[21] Mr. Curtis McKinney, Investigator for the Permit Division of the Department of Liquor Control, testified before the Liquor Control Commission. Mr. McKinney testified that, based on his investigation, the applicant, Painesville, would have qualified for issuance of the permit under the tests prescribed by R. C. 4303.29.

Mr. McKinney further testified that a new permit at Northfield Park would have no adverse impact on the surrounding neighborhood.

authority of the municipal corporation or the board of county commissioners or township trustees, *for a complete hearing upon the advisability of the issuance,* transfer of ownership, or transfer of location of the permit." (Emphasis added.)

The "local option" has become an integral part of the liquor permit issuance procedure employed in this state, and a municipality's right to be heard should not be lightly cast aside in favor of expediency, judicial or administrative.

The record in this case does not indicate that the trial court considered R. C. 4303.26 before it formulated its order to issue the permit. Furthermore, the order of the Court of Common Pleas makes no provision for exercise of the local option prior to issuance. Because R. C. 4303.26 requires the Department of Liquor Control to notify local municipalities and present them with an opportunity to be heard on the issuance of a new permit, and because the order of the Court of Common Pleas would require the department to violate a statutory duty to notify the municipality before issuance of the permit, the decision of the Court of Common Pleas is contrary to law insofar as it would require the department to issue the permit without notice to the local municipality, and without presenting the municipality with an opportunity to be heard.

The decision of the Court of Common Pleas is modified to require the Department of Liquor Control to first comply with the strictures of R. C. 4303.26, before issuing to the applicant, Painesville Raceway, Inc., a permit which would authorize Painesville to operate a liquor concession during its racing season, and only during its racing season.

*Judgment accordingly.*

KRUPANSKY, J., concurs.

PARRINO, J., dissenting. While I agree with the majority's observation that no statute, rule, or regulation expressly prohibits the issuance of separate permits to separate individuals for use at the same location, I disagree with the majority's conclusion.

Appellant argues that the circumstances of the instant case are unusual. However, the legislature has specifically provided for other unusual circumstances. See, *e.g.,* R. C. 4303.183 (seasonal permits for resort areas); R. C. 4303.201 (three-day permits for convention facilities); R. C. 4303.202

(temporary permits for special events). In R. C. 4303.30, moreover, the legislature has specifically described those circumstances in which duplicate permits may be issued to the *same* individual. In light of R. C. Chapter 4303's specificity, I cannot conclude that the legislature's failure to provide for duplicate permits to separate individuals is without significance. I conclude that the legislature did not intend to permit the issuance of separate permits to separate individuals for use at the same location.

The majority's conclusion, because it permits any person who leases an entertainment facility on a regular basis to obtain a permit operative only during the terms of his lease, effectively creates a new, temporary permit. Accordingly, I respectfully dissent.