**In re: Timken Mercy Medical Center**
*[Cite as 4 AOA 389]*

*Case No. 89AP-248*
*Franklin County, (10th)*
*Decided June 12, 1990*

*Messrs. Bricker & Eckler, Mr. Michael K. Gire and Ms. Catherine M. Ballard, for Timken Mercy Medical Center, Appellee.*

*Mr. Anthony J. Celebrezze, Jr., Attorney General, and Mr. Dennis G. Nealon, for Appellant.*

REILLY, P.J.

Appellant, Ohio Department of Health ("ODH"), appeals from a judgment of the Franklin County Court of Common Pleas, which affirmed a decision of the State Certificate of Need Review Board ("board"). The board granted a Certificate of Need ("CON") to appellee, Timken Mercy Medical Center ("Timken"), for addition of an open heart surgery unit to its existing program.

Timken filed an application for a CON on June 30, 1987 with ODH. The application requested the development of an open heart surgery unit at Timken's facilities. After a request by ODH for additional information, ODH declared Timken's application complete. Consequently, ODH initiated its merit review of the application.

After a public hearing of February 23, 1988, the Director of Health determined that Timken's CON application should be denied. Timken appealed to the board. A hearing was held before the board's hearing examiner in May 1988. The examiner took testimony from fourteen witnesses, considered a voluminous record, made extensive findings of fact and conclusions of law, and recommended that Timken's application should be granted. The examiner found that, based upon the relevant criteria, there is a need for an open heart surgery program in the eastern portion of Health Service Area ("HSA") VII, where Timken is located. Another program in the area already exists at Aultman Hospital.

The board, on August 25, 1988, after a consideration of the record and report, entered an order granting Timken a CON. ODH appealed to the Franklin County of Common Pleas, pursuant R.C. 119.12.

The common pleas court affirmed the board's order after a hearing. Thereafter, ODH appealed to this court, asserting the following assignment of error:

"The Court of Common Pleas erred in upholding the decision of the Certificate of Need review Board where there was no finding that the decision of ODH was clearly unreasonable or unlawful."

Before considering this assignment of error, it is necessary to pass on the threshold question of whether this court has jurisdiction to consider this appeal. Timken has filed a motion to dismiss the appeal, pursuant to Civ. R. 12(B)(1).

Pursuant to R.C. 119.12, an agency may appeal from a common pleas court's review of an agency decision only if the agency appeals on questions of law. *Katz v. Dept. of Liquor Control* (1957), 166 Ohio St. 299. R.C. 119.12, provides in pertinent part:

"* * * Such appeal by the agency shall be taken on questions of law relating to the constitutionality, construction, or interpretation of statutes and rules of the agency, and in such appeal the court may also review and determine the correctness of the judgment of the court of common pleas that the order of the agency is not supported by any reliable, probative, and substantial evidence in the entire record."

Hence, it is clear that, where a trial court's decision "* * * was made entirely upon the evidence * * *" and did not involve any interpretation of law, the agency cannot appeal. *Miller v. Dept. of Indus. Relations* (1985), 17 Ohio st. 3d 226, 227. Further, when the trial court "* * * had made no specific determination as to the meaning or application of a particular statute, rule or regulation,

the Court of Appeals is without jurisdiction to review the judgment of the Common Pleas Court." *Mentor Marinas* v. *Bd. of Liquor Control* (1964), 1 Ohio App. 2d 219, paragraph three of the syllabus. "* * * [A] mere possibility that the court decided the case on such a basis is insufficient, where * * * the court clearly issued its decision based upon a lack of reliable, probative and substantial evidence. * * *" *In the Matter of: The Deaconess Hospital* (Mar. 19, 1985), Franklin App. No. 84AP-280, unreported (1985 Opinions 694, 700).

To decide whether there was a specific determination relating to a particular statute, "[i]t is well established that the Court of Appeals may look beyond the language of the journal entry to determine whether it has jurisdiction * * *." *Painesville Raceway, Inc.*, v. *Dept. of Liquor Control* (1980), 70 Ohio App. 2d 219, 225. This court recognized in *Mentor Marinas* that "[w]here the journal entry itself recites a specific interpretation of a statute or regulation, jurisdiction is clear. * * *" *Mentor Marinas, supra*, at 224. Further, "* * * there is no problem where the journal entry specifically incorporates the opinion and makes it part of the entry and such opinion shows a specific interpretation. A more difficult question arises where the entry does not reflect a jurisdictional question and the opinion does, but the opinion has not been incorporated into the entry. * * *" *Id.* at 224.

In *Andrews* v. *Board of Liquor Control* (1955), 164 Ohio St. 275, the Supreme Court held that reference may be made to the opinion of the court if the entry is ambiguous. Further, in *A. B. Jac, Inc.*, v. *Liquor Comm.* (1972), 29 Ohio St. 2d 139, the Supreme Court held that reference may be made to the entire journal entry and the records of the proceedings below. *Id.* at paragraph two of the syllabus.

In this case, the entry and opinion of the trial court resolves the question. The trial court's judgment entry of February 10, 1989, states that it considered the issues raised in the briefs of the parties. The court further noted that:

"* * * [A] decision having been rendered by this Court on February 3, 1989,

"It is hereby ORDERED and ADJUDGED that for the reasons set forth in this Court's decision of February 3, 1989, the August 25, 1988 decision of the Certificate of Need Review Board granting a Certificate of Need to Timken Mercy Medical Center be AFFIRMED in its entirety."

The court's decision of February 13, 1988 noted that the department asserted three errors:

"1) that the hearing examiners' report was defective;

"2) that the board's order was not supported by reliable, probative and substantial evidence and was not in accordance with law; and

"3) that the board erred in applying the improper standard of review.

The court rejected ODH's first and second asserted errors. Regarding the third, the court stated that it declined to establish a new standard of review for the board. The court wrote that "* * * [i]t is axiomatic that the burden of proof is upon the applicant, in this instance, [Timken], to establish its right to a Certificate of Need by a showing of reliable, probative and substantial evidence. * * *" (Decision, page 3). After noting that the court's review was based on the substantial evidence test and that the court was not free to substitute its judgment for the board, the court added "* * * [t]his does not imply that the Board is not free to substitute its judgment for that of the ODH." (Decision, page 3). The court further stated, in pertinent part:

"ODH urges the Court to determine that where evidence is in conflict, the Board may not substitute its judgment. R.C. Section 3702.58 grants the right for an adjudicatory hearing and review to a person affected by the decision of the ODH in the respect to a health care project. No limitation upon the Board's review powers are enunciated within the statute. No case law supporting this argued limitation has been found. This Court concludes that the highest level of administrative review is generally accorded a presumption of correctness. The degree of this presumption varies depending upon the statutory language. The Court determines that the proper standard of review was exercised by the Board." (Decision, pages 3-4.)

Thus, in this case, the trial court's entry makes reference to its decision. The decision specifically refers to R.C. 3702.58 and the standard of review issues by ODH. Moreover, the decision holds that the statutes does not limit the board's review, but instead, the board may substitute its judgment for that of ODH. Although the court's decision contains language regarding the court's scope of review, of deference due to the board's decision, and of a presumption of correctness, when read in context it must be concluded that the court was not simply presuming that the board engaged in an abuse of discretion test.

The court affirmatively stated several times that R.C. 3702.58 allows the board to substitute its judgment for ODH. Further, it is important to

the court's review to rule on the issue. And, though the court also found that there was substantial evidence to support the decision, a question of law was presented. That question is the root of this appeal. Therefore, this court has jurisdiction to entertain this appeal under R.C. 119.12. Timken's motion to dismiss is overruled.

In this appeal, the assignment of error disputes the authority of the board to substitute its judgment for that of ODH. ODH contends that the board's proper standard of review for CON decisions is based on a determination of whether ODH's decision is unreasonable or unlawful. Essentially, ODH argues that, under R.C. 3702.58, the board is an appellate body which can reverse ODH's decisions only if there has been an abuse of discretion.

We have previously addressed the history of the federal and Ohio CON legislation in *Blanchester Care Center, Inc.*, v. *Ackerman* (Nov. 5, 1981), Franklin App. No. 81AP-113, unreported (1981 Opinions 3451). In sum, the CON process "* * * was designed to contain health care delivery costs and to insure more appropriate and efficient use of health care services." *Mid-Ohio Health Planning Federation* v. *Certificate of Need Review Bd.* (Apr. 1, 1982), Franklin App. No. 81AP-958, unreported (1982 Opinions 907, 911). To accomplish this, a CON is required before any new facility is built. *Oak Park Manor* v. *State Certificate of Need Review Bd.* (1985), 27 Ohio App. 3d 216. Thus, the CON process ensures that unneeded facilities will not built and that unnecessary costs will not be incurred.

R.C. Chapter 3702 establishes the process for obtaining a CON. Basically, an applicant submits an application to ODH for review by the Director of Health. Under R.C. 3702.53, the director is charged with the duty of administering the CON program. R.C. 3702.53(A)(2) and (3) provide that such administration includes reviewing the application, and granting or denying it based on the relevant review criteria. Under R.C. 3702.53(B), the director "* * * may conduct a public hearing in the course of review of any application. * * *" Affected persons dissatisfied with the decision of the director are entitled to an adjudication hearing before the board. R.C. 3702.58. The board consists of designated members of the General Assembly appointed individuals R.C. 3702.57.

Given these statutory provisions, ODH maintains that the General Assembly did not intend that the board may substitute its judgment for that of ODH. First, ODH argues the R.C. 3702.58 does not expressly allow the board to do so. Second,

ODH contends that R.C. 3702.58 does not contemplate a *de novo* hearing before the board because there are indications in that statute that the proceeding is quasi-appellate. Finally, ODH argues that, since it is the agency which has substantial expertise in the health field, the General Assembly could not have intended to relegate it to the status of merely a party in a *de novo* proceeding, especially since the board is not composed of health care professionals or technicians.

R.C. 3702.58 defines the proceedings before the board. R.C. 3702.58(A) provides, in pertinent part:

"An affected person shall be entitled to an adjudication hearing before the certificate of need review board on a decision of the director of health to grant, or withdraw a certificate of need or a ruling by the director that a proposed project is or is not a reviewable activity. * * * The request for a hearing shall be filed in writing with the board within thirty days after the decision or ruling of the director is mailed. The written request for a hearing shall state the assignments of error on which the request is based. * * *"

After provisions for a pre-hearing conference, R.C. 3702.58(A) further states:

"* * * The adjudication hearing shall be held within forty-five days after the conclusion of the conference and shall be conducted by a hearing examiner appointed in accordance with Chapter 119. of the Revised Code. The party requesting the hearing shall present its case first and shall have its case first and shall have the burden of proof. The hearing examiner shall submit to the board a written report setting forth findings of fact and conclusions of law and a recommendation of the action to be taken by the board * * *."

After provision for an opportunity to file objections to the report, R.C. 3702.58(A) provides:

"* * * The board's decision shall be based upon the record and shall be considered as the final decision or order of the board. The time limits specified in this division may be extended by agreement of all the parties to the appeal. * * *"

Further, R.C. 3702.58(A) includes:

"Any affected person or the director of health may appeal the board's order in the adjudication hearing to the court of common pleas of Franklin county. If the prevailing party, the director of health shall recover the cost of maintaining the civil action and reasonable attorney's fees."

R.C. 3702.58(B) states:

"If, in a proceeding under division (A) of this section, the board or a court upon appeal of the

board's order determines that a health service agency or the director of health committed procedural error, the board or the court may remand the matter to the director of health for further consideration or action."

Although some prior cases have discussed the authority of the board in this regard, no case has decided the issue presented in this appeal. *In re Wellesley Corp.* (1985), 18 Ohio St. 3d 176, involves the standard of review applicable to the common pleas court. Hence, the Supreme Court's statement that, if the department's "* * * decision is supported by reliable, probative and substantial evidence, it must be affirmed * * *," merely reflects the common pleas court's standard of review in an R.C. 119.12 appeal. Further, this court has only discussed the problem in dicta. See *Mid-Ohio, supra; Cincinnati Ambulatory Surgery Center* v. *Certificate of need Review Bd.* (Dec. 13, 1988), Franklin App. No. 88AP-478, unreported (1988 Opinions 4300, 4302), calling the proceeding qualified *de novo* but declining to decide the issue as it was not properly before the court. See, also, the concurring opinion of Judge Whiteside in *In the matter of: Christian Care Home of Cincinnati, Inc.*, (Dec. 28, 1989), Franklin App. No. 89AP-87, unreported (1989 Opinions 4957).

Basically, this decision must begin with the statute governing the board. As conceded, R.C. 3702.588 includes nothing expressly about the "standard of review" applicable to department decisions. However, the type of proceeding afforded by that statute is definite evidence of legislative intent. The review herein should reflect the Supreme Court's analysis in *General Motors* v. *McAvoy* (1980), 63 Ohio St. 2d 232. In deciding whether the Director of Environmental Protection was obligated to provide an opportunity for an adjudication hearing, the court wrote:

"The concept of a *de novo* hearing is totally inconsistent with the standard of review of lawfulness and reasonableness imposed upon the EBR by R.C. 3745.05. An initial hearing at some point is necessary because this court has noted that an appeal alone in this type of situation is not sufficient. In *Union Camp Corp.* v. *Whitman* (1978), 54 Ohio St. 2d 159, at page 162, it was stated that:

"'The right to a hearing generally is a basic right, and where it is withheld that right is clearly and substantially affected. Nor is that right any less affected as urged by the director because of the existence of an adequate appellate remedy at the close of the administrative proceeding.'" *Id.* at 237, fn. 2.

R.C. 119.06 provides that, subject to certain exceptions, "* * * [n]o adjudication order shall be valid unless an opportunity for a hearing is afforded in accordance with sections 119.01 at 119.13 of the Revised Code. * * *" R.C. 119.09 then provides the procedures available in an Administrative Act adjudication hearing.

As both parties concede, an unreasonable or unlawful standard of review is tantamount to an abuse of discretion test. See *Citizens Committee* v. *Williams* (1977), 56 Ohio App. 2d 61.

In R.C. 3702.58, the General Assembly used the phrase "adjudication hearing" to describe the hearing before the board. The hearing before the department is a public hearing affording no opportunity to test the evidence through procedures such as cross-examination. Though R.C. 3702.58 also uses the term "appeal" in several instances, the phrase "adjudication hearing," which is also used in R.C. 119.09, indicates an evidentiary administrative hearing.

Adjudication has a definite meaning. It means to present evidence in a particular case, find facts, and apply the law to those facts. When the legislature uses such a term in this context, it is an indication that the legislature intended an initial evidence proceeding, unless there are clear references in the statutory process to the contrary.

Other provisions in R.C. 3702.58 support the conclusion that the board conducts an evidentiary proceeding. For instance, R.C. 3702.58 refers to the burden of proof being placed upon the person requesting the hearing. The concept of burden of proof is normally used in connection with an evidentiary proceeding. Further, the hearing is conducted by a hearing examiner, or referee, appointed pursuant to R.C. 119.09. That referee submits findings of fact and conclusions of law, another procedure inherent in an evidentiary proceeding.

There is some appellate terminology in R.C. 3702.58. The department relies heavily on the fact that, under the statute, the party requesting the hearing must submit "assignments of error," and that the statute uses the term "appeal" in two places. Further, the statute provides for remand to the department if there has been procedural error. Hence, the department contends that these concepts are fundamentally incompatible with a concept of a *de novo* hearing.

Before considering these provisions, it is necessary to make clear the use of the term *"de novo"* because the parties have used the term in several contexts. In *General Motors, supra,* the Supreme Court wrote that an abuse of discretion

test is totally inconsistent with a *de novo* hearing. The court was discussing initial adjudicatory hearings. *De novo* means "anew." Hence, a *de novo* hearing means a new hearing. In this case, the hearing before the board was not a *de novo* hearing. It was an initial adjudication hearing. There has been no adjudication hearing preceding the one held by the board. A hearing before the director, if held, is a public hearing. The board's determination is *de novo* in the sense that it has been preceded by the department's determination.

In this case, ODH contends that an unreasonable or unlawful standard of review is not inconsistent with the hearing before the board because it is not *de novo*. ODH uses the term *"de novo"* to mean "wide open" review of all of the relevant evidence. Since that is not evident in this case, as the board is confined to the record and to the assignments of error presented, ODH contends that the hearing before the board is not an evidentiary proceeding. Further, the power to remand is also not usually evident in a *de novo* hearing, but is more related to an appeal. In any event, the statute does not define assignments of error. It can reasonably be read as constituting a means to narrow the issue presented to the board.

ODH also argues that the board itself has inconsistently interpreted its own obligation under the statute. In certain circumstances, a long-standing administrative interpretation of a statute may be considered and granted some deference by a court. However, ODH has provided this court only with unreported board orders which are inconsistent on the issue.

Further, ODH has not presented any analogous Ohio agency hearing procedure which utilizes an abuse of discretion test in the context of an initial adjudication hearing. ODH has attempted to do so with respect to hearings before the Environmental Board of Review. That statutory process is where ODH has obtained the unreasonable or unlawful language for its proposed standard of review. However, that standard of review is expressly set forth in the Environmental Board of Review's basic statute, R.C. 3745.05. If any hearing is analogous to the one in this case, it is R.C. 119.09, which includes the Administrative Procedure Act's provision regarding adjudication hearings.

Furthermore, ODH's proposed approach to the CON hearing issue in question renders the board essentially superfluous. For instance, under ODH's approach:

"ODH makes the initial determination of the CON; the board conducts a restricted review of this determination based on an abuse of discretion test; the common pleas court then conducts a semi-strict review of the board's decision based on the substantial evidence test; the court of appeals then conducts another restricted review based on an abuse of discretion test; and the Supreme Court then does the same.

If the legislature intended to provide for an abuse of discretion review when there was no prior adjudication hearing, it would have done so.

Nevertheless, ODH contends that if the board is entitled to substitute its judgment for that of ODH, then this court is reading ODH and its expertise out of the CON process. This court does not mean to denigrate the important role the department has in the CON process. We emphasize that R.C. 3702.588 establishes the role of the ODH in a board hearing.

Thus, the common pleas court did not abuse its discretion in interpreting R.C. 3702.58. The board conducts an adjudication hearing and need not restrict its determination to whether there was an abuse of discretion by ODH.

The remainder of the ODH's brief is directed to the evidence supporting the board's determination. The common pleas court found that there was reliable, probative and substantial evidence to support that determination.

"'When reviewing an order of the court of common pleas which determines an appeal from an administrative agency based upon the manifest weight of the evidence, our function is limited to determining whether the order of the court of common pleas was the product of an abuse of discretion. * * *'" *Oak Park Manor, supra,* at 219 (quoting *Angelkovski* v. *Buckeye Potato Chips Co.* [1983], 11 Ohio App. 3d 159); *In re Calcutta Health Care Center* (Feb. 13, 1990), Franklin App. No. 89AP-599, unreported (1990 Opinions 520); *In the Matter of: "Jefferson Health Care Center"* (Aug. 15, 1989), Franklin App. No. 89AP-182, unreported (1989 Opinions 2850). Cf. *In re Wellesley, supra,* at 178-179. "* * * Abuse of discretion '* * * implies a decision which is without a reasonable basis, one which is clearly wrong.' * * *'" *In re Jefferson Health Care Center, supra,* at 2854.

The primary dispute between the parties before the board and in the common pleas court was the evidence relating to the application of the so-called special review criteria in the Ohio Administrative Code. As the common pleas court noted, ODH "* * * does not dispute that the guidelines are not strictly mandatory but are designed to be reviewed with any other facts and circum-

stances in each application. * * *" (Decision, page 4).

Ohio Adm. Code 3701-12-24(C), provides:

"The SHPDA will not grant any certificate of need for the establishment of new open-heart surgical facilities except in the presence of unusual, documented circumstances of need and compliance with the national guidelines for health planning, as set forth in the Ohio state health plan."

The National Guidelines were repealed by the Federal Government over two years ago. Section 60, Title 52, C.F.R., page 10094. Further, Ohio Adm. Code 3701-12-24 was substantially amended in 1989, and deleted reference to the National Guidelines and the Ohio State Health Plan. Moreover, the guidelines were established years before angioplasty, a non-surgical approach to relieving obstruction in a blood vessel, became a recognized procedure. Such procedures often require open-heart surgery as a back-up.

The state health plan required projected minimum numbers of heart procedures to be performed as a prerequisite to establishing a need for an open-heart facility. For institutions performing surgery on adults, the plan required a minimum of 200 procedures per year for three years after initiation of the program. For institutions performing pediatric open-heart surgery, the plan required 100 procedures per year for three years after initiation of the program, 75 of which should be open-heart. Further, the plan provided that no additional open-heart units should be initiated in an HSA unless each existing open-heart unit in the area was conducting and expected to conduct 350 adult and 130 pediatric open-heart procedures.

There was much testimony at the hearing before the examiner regarding the 350 and 200 minimum requirements in relation to Timken's proposed $4.4 million facility. This evidence consisted of, among other matters, statistics relating to the number of procedures performed at Timken, Aultman Hospital and the Cleveland Clinic. Aultman, which as mentioned above, is in the same HSA as Timken and has an open-heart unit, is three miles away from Timken. There was also evidence of the current and expected referral patterns between these hospitals.

ODH's consultant, who wrote the report to the director recommending denial of Timken's CON application, was cross-examined by Timken. His testimony showed that he had made some assumptions about the special review criteria which indicated that he did not altogether understand the basis for the review standard. Further, he was questioned about several inconsistencies in his report. He had stated that certain groups had opposed the CON, when in fact they had not. Moreover, he had utilized two studies which were relatively dated, considering the recent advancements in angioplasty and utilization trends.

ODH called two Aultman physicians as witnesses. Both stated that they did not opposed the CON, although they were concerned with the impact that the grant of a CON would have on cardiology practice at Aultman. Basically, they maintained that it might be difficult for Timken to obtain qualified personnel for a beginning program. However, on cross-examination, one of the physicians stated that Aultman had no such problem when it initiated its program after it obtained its CON.

Timken called ten additional witnesses. The testimony was presented to establish that there was a need for an additional open-heart program at Timken and in the area. Testimony established that the Timken CON was essentially supported by the community. There was testimony that a back-up, open-heart program constitutes an essential facet of the current standard of care, despite the fact the Aultman is only three miles away. Further, several witnesses testified concerning how Timken calculated the need for such a program. This included calculations based upon current utilization of existing facilities, population projections and projected medical practice.

Considering all of the evidence, this court does not conclude that the judgment of the common pleas court constituted an abuse of discretion.

Therefore, ODH's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

WHITESIDE and MARTIN, JJ., concur.

MARTIN, J., of the Fairfield County Court of Common Pleas, sitting by assignment in the Tenth Appellate District.